IN THE UNITED STATES DISTRICT COURT
DISTRCT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER

Criminal Action No. 12-cr-00047-4
Civil Action No. 18-cv-01217-MSK

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**ISMAEL CORDOVA-FRIAS,**

    Defendant.

---

**OPINION AND ORDER DENYING MOTION TO VACATE**

---

**THIS MATTER** comes before the Court pursuant to Mr. Cordova-Frias' Motion to Vacate **(# 705)** under 28 U.S.C. § 2255, the Government's response **(# 714)**, and Mr. Cordova-Frias' reply **(# 719)**. Also pending is Mr. Cordova-Frias' Motion for Status **(# 720)**, which the Court denies as moot as a result of this ruling.

Mr. Cordova-Frias, along with eleven other co-defendants, was charged in a multi-count Indictment **(# 1)** of January 26, 2012 with participating in a drug distribution conspiracy in violation of 21 U.S.C. § 846, as well as with possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a) and (b)(1). Authorities were unable to immediately locate Mr. Cordova-Frias – apparently, he was residing in his native Mexico, unaware of the charges against him -- and thus, the charges against him remained unaddressed for several years.

On July 14, 2017, authorities located Mr. Cordova-Frias in Denver, Colorado **(# 626)** and placed him under arrest. The Court scheduled a trial to begin on September 25, 2017 **(# 635)**, but that trial date was vacated on August 23, 2017, when Mr. Cordova-Frias, through counsel,

filed a Notice of Disposition **(# 634)**.  In response, the Court set a Change of Plea Hearing for Mr. Cordova-Frias for October 23, 2017 **(# 636)**.  On October 18, 2017, Mr. Cordova-Frias moved **(# 649)** to vacate the plea hearing, citing the need for additional time to have plea documents translated into Spanish (instead of having them explained orally through a Spanish interpreter).  The Court granted Mr. Cordova-Frias' request, resetting his plea hearing to November 14, 2017 **(# 654)**.

On November 8, 2017, Mr. Cordova-Frias again moved **(# 655)** to continue his plea hearing so as to allow him additional time to review the translated plea documents with his family.   Once again, the Court granted the motion and reset the plea hearing to January 16, 2018 **(# 658)**.  On January 11, 2018, Mr. Cordova-Frias moved **(# 662)** for a third time to continue the plea hearing, explaining that he "would like additional time to contemplate the plea offer in this case" and to discuss it further with his wife during an upcoming visit.  Finding this request to be without good cause, the Court denied it **(# 663)**, advising Mr. Cordova-Frias that he could either plead guilty as scheduled on January 16, 2018 or the Court would set the matter for trial.  At the January 16, 2018 hearing, Mr. Cordova-Frias announced that he was not prepared to proceed with the plea and the Court deemed his Notice of Disposition to be withdrawn **(# 664)**.  The Court then set the case to proceed to trial on February 20, 2018.

On January 23, 2018, Mr. Cordova-Frias filed a new Notice of Disposition **(# 666)**.  The Court took Mr. Cordova-Frias' guilty plea at hearing on February 1, 2018 **(# 668)**.   Mr. Cordova-Frias pled guilty to Count 18, charging him with possession of a controlled substance with intent to distribute, and the Government agreed to dismiss Count 1, which charged Mr. Cordova-Frias with being part of a drug distribution conspiracy.  Mr. Cordova-Frias' Plea Agreement **(# 669)**, he admitted that the Government could prove that Mr. Cordova-Frias served

as a courier, carrying cocaine between drug distributors. Law enforcement officers observed Mr. Cordova-Frias meeting with Alejandro Jurado-Garcia, a suspected drug trafficker, on September 5, 2011. After Mr. Cordova-Frias left that meeting, law enforcement officers pulled his car over for a traffic violation. During a search of Mr. Cordova-Frias for weapons, police discovered a baggie containing 8.58 grams of crack cocaine in Mr. Cordova-Frias' pocket. After arresting him, police searched his vehicle and discovered a package containing 963 grams of cocaine behind the dashboard.

On May 14, 2018, the Court sentenced **(# 699)** Mr. Cordova-Frias to 60 months of imprisonment.

On May 17, 2018, Mr. Cordova-Frias, acting *pro se*, filed the instant Motion to Vacate **(#708)** his plea and sentence. Mr. Cordova-Frias raised two issues: (i) that the Government's failure to effectuate his arrest on the pending charges between January 2012 and July 2017 operated to deprive him of his guarantee to a speedy trial under the Sixth Amendment to the U.S. Constitution; and (ii) that his counsel provided ineffective assistance by advising him to forego a meritorious speedy trial claim and to instead plead guilty to the charges against him. The Court understands Mr. Cordova-Frias' reply brief to concede that he cannot obtain relief under the first issue – the substantive speedy trial violation – due to a waiver contained in his Plea Agreement. *See Docket #* 719 at 3 ("for this case and to this Movant's understanding, the only issue here is ineffective assistance of counsel").

To obtain relief based on ineffective assistance of counsel, Mr. Cordova-Frias must make two separate showings. First, he must show that his counsel's performance fell below an objective standard of reasonableness. Second, he must show that counsel's ineffectiveness

prejudiced his defense. *Garza v. Idaho*, 139 S.Ct. 738, 744 (2019), *citing Strickland v. Washington*, 466 U.S. 668 (1984).

Turning first to the question of whether his counsel provided ineffective assistance, the Court "presumes that counsel's performance is reasonable and might entail a sound strategy." *Harris v. Sharp*, 941 F.3d 962, 973 (10th Cir. 2019). This inquiry is "highly deferential" to decisions made by the attorney, and "strategic decisions [made] after a thorough investigation are afforded even greater deference and are virtually unchallengeable." *Id.* Decisions by counsel to pursue (or not pursue) a defense are quintessentially strategic ones. *U.S. v. Holloway*, 939 F.3d 1088, 1101 (10th Cir. 2019). Absent some particular basis to conclude otherwise, the Court must presume that Mr. Cordova-Frias' counsel made a tactical decision when declining to assert that pre-arrest delay violated Mr. Cordova-Frias' rights. *See Boucher v. Wyoming Dept. of Corrections*, 635 Fed.Appx. 416, 422 (10th Cir. 2015).

The record reflects that on October 2, 2017, Mr. Cordova-Frias' wife e-mailed Mr. Faye, Mr. Cordova-Frias' attorney. The e-mail explained that Mr. Cordova-Frias had asked his wife to advise Mr. Faye that, among other issues Mr. Cordova-Frias wanted to explore, "[t]here has been a speedy trial violation and prejudice should be presumed for the 6 years delay from indictment." Mr. Cordova-Frias' wife went on to state that "he really wants to you analyze [these issues]." Mr. Faye wrote back, thanking Mr. Cordova-Frias' wife for the information and explaining that "it sounds like he is getting some bad advice from the inmates in the prison." Mr. Faye assured that he would go to visit Mr. Cordova-Frias shortly thereafter. On October 17, 2017, Mr. Cordova-Frias' wife wrote again to Mr. Faye at Mr. Cordova-Frias' request, further detailing the elements of a speedy trial claim, pointing out facts that Mr. Cordova-Frias believed were relevant, and citing supporting cases. The record does not disclose Mr. Faye's response to this

second communication, but Mr. Cordva-Frias' reply brief gives some idea. He states that he and Mr. Faye "discussed the issue of speedy trial rights" during two of Mr. Faye's visits to the jail where Mr. Cordova-Frias was housed. According to Mr. Cordova-Frias, Mr. Faye explained "that to fight speedy trial was a very difficult route to go and it would mean to go to trial with no possibility of any plea agreements with the government." Later, Mr. Cordova-Frias again acknowledges that Mr. Faye "knew about his client's concerns about speedy trial violation, but decided not to bring this issue as part of his defense strategy," perhaps because "to discuss the matter of speedy trial would dissolve any plea agreement with the government if any attempt to win on speedy trial failed."

The Court finds that Mr. Cordova-Frias has not carried his burden of demonstrating that Mr. Faye's representation fell below an objective standard of reasonableness. The record reflects that Mr. Faye was aware of the possibility that Mr. Cordova-Frias could assert a speedy trial defense but, in Mr. Faye's opinion, that would have been a bad strategic choice because it would make it unlikely that the Government would have offered Mr. Cordova-Frias a favorable plea agreement (or perhaps any plea agreement at all). The record reflects that Mr. Cordova-Frias ultimately accepted Mr. Faye's advice to plead guilty rather than pursue a speedy trial defense. At his Change of Plea hearing, the Court inquired of Mr. Cordova-Frias whether he was satisfied with Mr. Faye's representation of him, to which Mr. Cordova-Frias responded affirmatively, and whether Mr. Cordova-Frias had any "concerns, complaints, or criticism about the legal representation [he] received" from Mr. Faye, to which Mr. Cordova-Frias responded in the negative. Thus, the record reflects that Mr. Cordova-Frias ultimately accepted Mr. Faye's belief that a prompt plea, rather than assertion of a speedy trial claim, would achieve the best result.

It is possible that a more aggressive attorney would have considered that the chance of obtaining a dismissal on speedy trial grounds was worth the risk of a less favorable (or no) plea and advised Mr. Cordova-Frias accordingly. But the fact that Mr. Faye instead counseled a more cautious approach does not render his performance ineffective. The deferential nature of the *Strickland* standard recognizes that different attorneys will evaluate the same set of facts in different ways, and an attorney whose defense strategy focuses on negotiating a plea, rather than asserting other colorable defenses, does not necessarily fall below the *Strickland* standard. *See e.g. U.S. v. Rising*, 631 Fed.Appx. 610, 615-16.

Indeed, as in *Rising*, the plea agreement Mr. Faye was able to secure for Mr. Cordova-Frias brought considerable benefits. Most notably, it secured the dismissal of the conspiracy count, freeing Mr. Cordova-Frias from responsibility for quantities of drugs moved by his co-defendant and alleged co-conspirator, Mr. Jurado-Garcia. When Mr. Jurado-Garcia pled guilty, he was found responsible for distributing between 5 and 15 kilograms of cocaine, placing him within the penalty provisions of 21 U.S.C. § 841(b)(1)(A) and subject to a mandatory minimum 10-year sentence. By contrast, because the dismissal of the conspiracy count decoupled Mr. Cordova-Frias from Mr. Jurado-Garcia, Mr. Cordova-Frias' responsibility for only the 963 grams of cocaine he personally possessed allowed him to fall within the less-severe penalty provisions of 21 U.S.C. § 841(b)(1)(B), where he faced only a 5-year mandatory minimum sentence. Thus, Mr. Faye's decision to favor plea negotiations over pursuit of a speedy trial defense may have spared Mr. Cordova-Frias from a much longer sentence, even if it required Mr. Cordova-Frias to forego the chance at obtaining an outright dismissal of the charges against him.

Accordingly, the Court finds that Mr. Cordova-Frias has not demonstrated that Mr. Faye's performance fell below a standard of objective reasonableness, and thus, Mr. Cordova-Frias' claim of ineffective assistance of counsel is without merit.

Nevertheless, in the interests of completeness, the Court also considers whether Mr. Cordova-Frias could prove that any ineffective performance by Mr. Faye in not pursuing a speedy trial defense caused Mr. Cordova-Frias to suffer prejudice. In this regard, Mr. Cordova-Frias must show that there is a reasonable probability that, but for his counsel's actions, the result of the proceeding would have been different – *i.e.* that his speedy trial defense would likely have been found to be meritorious. *Harris*, 941 F.3d at 974.

Under the Sixth Amendment to the U.S. Constitution, defendants are guaranteed the right to a speedy trial. Whether that right was violated requires the Court to consider four factors: (i) the length of the delay, (ii) the reason for the delay, (iii) the extent to which the defendant promptly asserted his speedy trial rights, and (iv) prejudice. *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972). This Court superficially considers the first three elements because it finds that Mr. Cordova-Frias would not ultimately be able to establish the fourth, prejudice. It is clear that the roughly 5½-year delay between Mr. Cordova-Frias' indictment and his arrest[1] is of significant length to warrant further inquiry. And the Court takes Mr. Cordova-Frias at his word that he did nothing to secrete himself from law enforcement authorities while residing in Mexico

---

[1] The record reflects that the Mr. Cordova-Frias' prosecution moved with all haste upon his arrest. Barely more than a month passed between his arraignment and his initial filing of a Notice of Disposition. Although seven more months passed before Mr. Cordova-Frias actually pled guilty, the record reflects that the entirety of that time was due to requests made by Mr. Cordova-Frias himself to delay proceedings for various reasons (and indeed, the Court was required to prompt Mr. Cordova-Frias forward). In such circumstances, the Court deems the only actionable delay in this case to be the 5½ years between Mr. Cordova-Frias' indictment and arrest.

7

during this time.  In such circumstances, the Government's failure to locate and arrest him appears to have resulted from negligence in seeking him out, a reason that *Barker* characterizes as, essentially, "neutral."  407 U.S. at 531.  Certainly, Mr. Cordova-Frias has not offered any evidence that the Government purposefully delayed his arrest in order to hamper his defense.  Finally, the Court will assume that Mr. Cordova-Frias promptly raised his speedy trial concerns with Mr. Faye, although the record reflects that, once Mr. Cordova-Frias entered a Notice of Disposition, he dragged his own feet in proceeding promptly to a guilty plea.

That leaves the question of prejudice.  Mr. Cordova-Frias bears the burden of demonstrating how the delay in arresting him prejudiced his defense, and his failure to specify such prejudice "will eviscerate" his speedy trial claim.  *U.S. v. Medina*, 918 F.3d 774, 881 (10th Cir. 2019).  In some circumstances, defendants who faced "extreme" delay between indictment and trial may rely on a "presumption of prejudice" that accompanies such delay.  But the 10th Circuit deems that presumption to arise only when the delay has exceeded six years.  *U.S. v. Margheim*, 770 F.3d 1312, 1329 (10th Cir. 2014).  Thus, Mr. Cordova-Frias' 5½-year delay, although it begins to approach six years, is not sufficient on its own to constitute prejudice sufficient to support a claim of a constitutional violation.

Instead, Mr. Cordova-Frias must point to some actual prejudice he suffered because of the delay in effectuating his arrest.  *Barker* recognizes three categories of such prejudice based on the interests that the speedy trial guarantee was intended to address: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the accused, and (iii) limiting the possibility that the defense will be impaired through the loss of critical evidence or witnesses.  407 U.S. at 532.  Needless to say, the first two concerns are not implicated here, as Mr. Cordova-Frias resided in Mexico as a free man, entirely unaware of his indictment during the 5½-year

period in question. The sole question, then, is whether the delay in securing Mr. Cordova-Frias' arrest prejudiced his ability to marshal relevant witnesses and evidence. In this respect, Mr. Cordova-Frias makes a single allegation: that in that 5½-year period he "los[t] a cell phone and the phone records which would show other co-defendants involvement in the charges, thereby helping establish exculpatory evidence of [his] attempts to cease the criminal activity of others, showing his innocence." The Court understands this to mean that Mr. Cordova-Frias believes that, had he not lost the cell phone, he could have proven that he made attempts to withdraw from the conspiracy at some point in time.

The Court need not evaluate this contention according to the factors discussed in *Medina*, 918 F.3d at 781-82. The loss of such evidence might[2] have been sufficient to demonstrate prejudice if Mr. Cordova-Frias had been convicted of the conspiracy charge, but he was not. He pled guilty to a charge of possession of the cocaine found in his vehicle, and it is difficult to see how the loss of the cell phone or messages would have assisted Mr. Cordova-Frias in defending against that charge. Thus, Mr. Cordova-Frias has not demonstrated that the delay in effectuating his arrest caused him to suffer any prejudice, and, as a consequence, he cannot show that the outcome of his case would likely have been different had his counsel advised him to pursue a speedy trial defense.

---

[2]  The Government aptly notes that Mr. Cordova-Frias was caught with the cocaine on September 5, 2011, and the conspiracy charged in the Indictment ran from May 2011 to September 15, 2011. Thus, Mr. Cordova-Frias' attempted withdrawal from the conspiracy must have occurred between September 6 and September 15, 201 (unless, perhaps, he withdrew from the conspiracy earlier but later re-joined it in or about September 2011). But withdrawal from a conspiracy only insulates a conspirator from liability for events occurring <u>after</u> the withdrawal. *See Smith v. U.S.*, 568 U.S. 106, 111 (2013) ("withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy"). Even if Mr. Cordova-Frias withdrew from the conspiracy on September 6, 2011, he would still be criminally liable for the conspiracy's actions between May and August 2011.

Because Mr. Cordova-Frias has not demonstrated either prong of the *Strickland* analysis, his Motion to Vacate **(# 705)** is **DENIED**. The Clerk of the Court shall close the corresponding civil case.

Dated this 9th day of January, 2020.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge